UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANTONIO D. TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00337-JPH-MG |
| | ) | |
| KEYES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Antonio Townsend, an inmate at Wabash Valley Correctional Facility ("WVCF"), alleges that he was subjected to unconstitutional conditions of confinement when his cell was contaminated with sewage. He brings claims under the Eighth Amendment, alleging that multiple prison employees were deliberately indifferent to the conditions in his cell. The defendants have moved for summary judgment. For the reasons that follow, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to

the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar,* 985 F.3d at 572–73.

At all times relevant to the allegations in the complaint, Mr. Townsend was incarcerated at Wabash Valley.  Dkt. 2 at 5 (Verified Complaint).

From May 12 through 24, Mr. Townsend's cell was contaminated with raw sewage water and human feces because of a broken pipe in the pipe chase closet between his and his neighbor's cell.[1]  *Id.*  When an inmate would flush his toilet, the toilet water would leak out of the hole in the broken pipe and flood Mr. Townsend's cell.  *Id.* at 5-6.

Mr. Townsend and his neighbor talked to Sergeant Keyes about the problem, and Sergeant Keyes told them he would try to get it fixed.  Dkt. 51-1 at 1 (Lowe Declaration).  Mr. Townsend also talked to Sergeants Leffler and Simmerman about the problem and asked for cleaning supplies.  Dkt. 2 at 6.  He asked an inmate worker to see if Maintenance Supervisor McDonald could fix the problem.  *Id.* at 7.  Mr. Townsend wrote to Warden Vanihel, Mr. Hendrix and Lieutenant Holcomb complaining of the issue.  Dkt. 31 at 7; Dkt. 51-1 at 3 (Request for Interview to Warden).  On May 18, 2021, Lieutenant Holcomb entered the range to investigate the problem.  Dkt. 2 at 8.  Mr. Townsend asked him for cleaning supplies, but he received none.  *Id.*  An inmate maintenance worker, Matthew Henderson, attempted to fix the leak on May 24.  *Id.*  Mr.

---

[1] Defendants take issue with Mr. Townsend's use of the term "flooded" in describing the conditions in his cell.  Dkt. 47 at 7.  The crux of Mr. Townsend's claims is that he was exposed to unsanitary conditions in his cell created by a leaking pipe that allowed sewage water containing urine and feces to continually leak into this cell where it would pool up and remain for extended periods of time.  Dkt. 31 at 4-5.  Regardless of whether the sewage water "flooded" the cell, its presence on the floor of the cell is at the core of Mr. Townsend's claims.  For clarity and ease of reference, the Court uses the term "contaminated" to describe the presence of sewage water containing urine and feces on the floor of Mr. Townsend's cell.

3

Townsend also asked Officers Turney, Malott, Reed, Shepard, Riordan, Hall, Graham, and Earl for protective gear and cleaning supplies. *Id.* at 7.

The defendants have provided video excerpts of the A West Range from May 12 through May 15. *See* dkt. 46-1-7. The Court's review of the video reveals a puddle of water outside the chase closet and inmates and officers walking near or through the puddle.

On May 16, Lieutenant Holcomb placed a work order with the maintenance department regarding a plumbing issue. Dkt. 46-9 ¶ 8 (Holcomb Aff.); dkt. 46-10 at 1 (Work Order). The work order was completed on May 31, 2022, and the maintenance department reported that there was not any water within the chase and the water was likely coming from someone throwing water or urine under the door. Dkt. 46-9 ¶ 9.[2]

Mr. Hendrix was the Safety Hazard Manager at WVCF in May of 2022. Dkt. 46-11 ¶ 2. He was not involved with the maintenance department within WVCF or with offender transfers between cells. *Id.* ¶ 4-5. When he received a complaint from an offender regarding a maintenance issue, he would forward the complaint to the maintenance department. *Id.* ¶ 6.

---

[2] As Mr. Townsend points out, Warden Vanihel testified that "The response to the request form was that the issue was resolved with the replacement of a valve." Dkt. 46-12 ¶ 7. So, there is at least a dispute of fact regarding the cause of the leak at issue. *See Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) ("Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources."). This dispute of fact, however, is not material. Regardless of the cause of the leak, the crux of Mr. Townsend's claim is that the defendants were aware of the leak and did not take reasonable measures to protect him from exposure to it.

4

Warden Vanihel was the warden at WVCF throughout May 2022, and was generally not personally involved in responding to maintenance issues within the facility. Dkt. 46-12 ¶ 3. When his office received a complaint regarding a maintenance issue, Warden Vanihel forwarded it to the maintenance department or appropriate correctional staff. *Id.* ¶ 4.

### III.
### Discussion

The defendants seek summary judgment, arguing that (1) Mr. Townsend was not subjected to conditions of confinement that violate the Eighth Amendment, and (2) they were not deliberately indifferent to his conditions. Defendants Vanihel, Hendrix, and McDonald also argue that they were not personally involved in the alleged constitutional violation.

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to the inmate's health and safety." *Id.* Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Id.*; *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle"

5

that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted).  Neither "negligence [n]or even gross negligence is enough." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

### A. Sufficiently Serious Condition

Defendants argue that the conditions in Mr. Townsend's cell were not serious enough to support an Eighth Amendment conditions-of-confinement claim.  Dkt. 45 ¶ 4.  They designate as evidence video recordings showing there was only a small puddle of water outside of the chase closet and that correctional staff, inmate workers, and others would walk unfazed through or around the puddle.  Dkt. 47 ¶¶ 11-17.  The video recordings, however, do not clearly capture the events at issue or blatantly contradict Mr. Townsend's version of the events.  So while relevant, the video recordings are not dispositive.  *See McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

The videos show that there was a puddle of water outside the chase closet near Mr. Townsend's cell.  But the videos cover only excerpts of four days of the approximately two weeks Mr. Townsend contends his cell was contaminated.  Further, because the videos do not show the inside of Mr. Townsend's cell, they do not establish the absence of a dispute about how much water leaked into Mr. Townsend's cell or the contents of that water.  Similarly, although officers and inmates can be seen walking near the water

without reaction, this does not blatantly contradict Mr. Townsend's testimony that the water inside his cell had an "extraordinary foul smell that would make [him] gag and feel sick." Dkt. 31 at 5. Moreover, unlike those who merely walked by or through the puddle, Mr. Townsend was required to be in close physical proximity to the water puddle for extended periods of time. The videos do not establish that the sewage water in Mr. Townsend's cell did not create a condition that was objectively serious and an excessive risk to Mr. Townsend's health and safety.

Exposing an inmate to human waste for a prolonged period of time may violate the Eighth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (recognizing clearly established right of inmates "not to be forced to live surrounded by their own and others' excrement"); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (inadequate sanitation can create adverse conditions that deprive a plaintiff of the minimal civilized measure of life's necessities); *Merritt v. McClafferty*, No. 3:21-CV-502-DRL, 2023 WL 8543578, at *2 (N.D. Ind. Dec. 11, 2023) ("a reasonable jury could conclude that housing Mr. Merritt in a cell with sewage for twelve hours for no reason denied him the minimal civilized measure of life's necessities."). Here, the evidence allows a reasonable jury to find that the conditions in Mr. Townsend's cell were objectively serious and created an excessive risk to his health and safety.

7

## B. Deliberate Indifference

Sergeants Keyes, Leffler, and Simmerman, Lieutenant Holcomb, and Officers Turney, Malott, Reed, Shepard, Riordan, Hall, Graham, and Earl[3] argue that there is no evidence showing that they were deliberately indifferent to the conditions in Mr. Townsend's cell. On the contrary, they argue, the designated evidence shows that they took reasonable measures to rectify the situation.[4]

In support of this argument, the defendants designate videos which show instances when a correctional officer or maintenance worker performed work on the chase closet and cleaned the area around the closet. Dkt. 46-8 at 2:30, 53:53-58:13; dkt. 46-4 at 1:10:42-1:15:00. But as previously noted, the designated videos only depict the events limited segments of time over the lengthy period in which Mr. Townsend claims he was exposed to sewage. This

---

[3] The defendants' argument that Warden Vanihel, Mr. Hendrix, and Mr. McDonald were not personally involved in the alleged deprivation of Mr. Townsend's rights is addressed separately below.

[4] The defendants also argue in reply that Mr. Townsend's statement that he advised Defendants Riordan, Reed, Turney, Shepard, and Malott of the "situation" is too vague to allow a reasonable jury to conclude that these defendants were aware of the allegedly unconstitutional conditions to which Mr. Townsend was exposed. Dkt. 55 at 4. But it is clear from the context of the claims that the "situation" refers to the alleged sewage leak into Mr. Townsend's cell. Defendants also argue that because Mr. Townsend did not mention Defendants Hall, Graham, Earl, and Simmerman in response to the motion for summary judgment, he has not designated evidence to show they are not entitled to summary judgment. First, Defendants did not argue in their initial brief that Mr. Townsend's verified testimony that he advised them of the "situation" was too vague to make them aware of the allegedly serious conditions to which Mr. Townsend was exposed. *See United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019). Further, Defendants themselves designated evidence in support of their summary judgment motion that Defendants Hall, Graham, Earl, and Simmerman were involved in the events at issue, arguing only that Defendants Vanihel, Hendrix, and McDonald were not personally involved. *See* Dkt. 47, dkt. 55.

evidence, which does not show the condition of Mr. Townsend's cell during the entire timeframe covered by his claims, does not foreclose a reasonable jury from finding that the defendants were aware of yet failed to respond to a serious condition in Mr. Townsend's cell.

Next, the defendants point out that Lieutenant Holcomb placed a work order on the closet on May 16, alerting the maintenance department about the issue. Dkt. 46-9 ¶ 8; dkt. 46-10 at 1. Consequently, the leak was fixed—two weeks after the work order was placed. Dkt. 46-9 ¶ 9. Viewed in the light most favorable to Mr. Townsend, the evidence shows that his cell was exposed to sewage water, the defendants occasionally attempted to fix the leak, and the leak that caused the sewage water to be in the cell was fixed no less than two weeks after Mr. Townsend notified Defendants of the leak. The evidence further shows that prison officials cleaned the area outside Mr. Townsend's cell, but did not clean inside his cell or give him the supplies to do so himself.[5] *See* dkt. 31 at 6.

A reasonable jury could conclude that the defendants let a two-week period pass without rectifying the problem and without providing Mr. Townsend with cleaning supplies, or that they "decided not to do anything" to help Mr. Townsend "though [they] could easily have done so." *Merritt*, No. 3:21-

---

[5] In their reply, Defendants quibble with Mr. Townsend's contention that he was not given "proper" cleaning supplies or protective gear. Dkt. 55 at 3-4. But it is undisputed for purposes of summary judgment that Mr. Townsend was given no cleaning supplies at all during this time. Dkt. 31 at 6 ("I asked every defendant for the proper protective gear and cleaning supplies to clean the raw sewage water, urine, and feces from out of my cell on multiple occasions, but yet nothing was done….").

9

CV-502-DRL, 2023 WL 8543578, at *3 (quoting *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)). Accordingly, these defendants are not entitled to summary judgment on Mr. Townsend's conditions-of-confinement claim.

### C. Personal Involvement

Finally, Defendants Vanihel, Hendrix, and McDonald argue that they are entitled to summary judgment because they were not personally involved in the events described in Mr. Townsend's complaint. To recover damages under § 1983, "'a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

Here, Warden Vanihel and Mr. Hendrix testified that they were not actively involved with the maintenance department at WVCF, and that when they received any complaints regarding a maintenance issue, they would forward those complaints to the maintenance department to handle the issue. Dkt. 46-11 ¶¶ 2-6; dkt. 46-12 ¶¶ 2-4. Mr. Townsend has not designated evidence to dispute these facts. Accordingly, Warden Vanihel and Mr. Hendrix are entitled to summary judgment based on their lack of personal involvement in the alleged failure to rectify a sewage leak. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly.").

Next, there is no designated evidence that Mr. McDonald was personally aware of or involved in the maintenance and cleaning issues in this case. Although Mr. Townsend states that he asked an inmate maintenance worker to notify Mr. McDonald about the issue, dkt. 2 at 7, there is no designated evidence that Mr. McDonald was so informed. Therefore, no evidence would allow a reasonable jury to conclude that Mr. McDonald had any knowledge of Mr. Townsend's claims or failed in any responsibility to fix the problem. Further, the fact that Mr. McDonald responded to a grievance after the problem had been resolved, dkt. 51-1 at 4, is not enough to show that Mr. McDonald was personally aware of the conditions of Mr. Townsend's cell at the time he contends it was contaminated.

Because it is undisputed that Warden Vanihel, Mr. Hendrix, and Mr. McDonald were not personally involved in the alleged violation of Mr. Townsend's rights, they are entitled to summary judgment.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [45], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the claims against Warden Vanihel, Mr. Hendrix, and Mr. McDonald. The **clerk shall terminate** these defendants on the docket. The motion is otherwise **DENIED**.

Based on the spelling of these names in the defendants' motion for summary judgment, the **clerk is directed** to amend the docket to reflect that Defendant Leftler's name is spelled Leffler and Defendant Tumey's name is Turney.

The Court prefers that Mr. Townsend be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Townsend a motion for assistance recruiting counsel with his copy of this Order. Mr. Townsend shall have **twenty-one days** to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**SO ORDERED.**

Date: 9/26/2024

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

ANTONIO D. TOWNSEND
228661
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Magistrate Judge Garcia